[Cite as *Bromberg v. Carter*, 2016-Ohio-2966.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  |  | JUDGES: |
| JOSHUA BROMBERG | : | Hon. Sheila G. Farmer, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 15-CA-61 |
| ALLIE K. CARTER | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Civil appeal from the Fairfield County Court
of Common Pleas, Domestic Relations
Division, Case No. 2015PA265

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      May 12, 2016

APPEARANCES:

For Plaintiff-Appellee        For Defendant-Appellant

JOSHUA BROMBERG PRO SE      JASON DONNELL
15 Red Bud Land        118 S. Pearl Street
Lancaster, OH        Lancaster, OH 43130

*Gwin, J.,*

**{¶1}** Appellant appeals the November 24, 2015 judgment entry of the Fairfield County Court of Common Pleas, Domestic Relations Division, granting temporary custody of the minor child to appellee.

*Facts & Procedural History*

**{¶2}** Appellee Joshua Bromberg is the biological father of B.B., born July 13, 2012. Appellant Allie Carter is the biological mother of B.B. Appellant and appellee were never married. Appellant lives in Avilla, Indiana and appellee lives in Lancaster, Ohio. In August or September of 2013, appellant left B.B. in the care of appellee. On August 22, 2015, while B.B. was at a visit appellee permitted with his maternal grandmother, appellant removed B.B. from appellee's custody. Appellant was able to obtain physical custody because there was no court order in place regarding custody.

**{¶3}** On November 10, 2015, appellee filed a complaint for custody of B.B. and included a motion for emergency custody of B.B. The trial court granted an ex parte order of temporary custody to appellee and found irreparable harm would occur without the ex parte order. The trial court also ordered appellant have no contact with B.B. until further order of the court.

**{¶4}** The trial court held a full hearing on the emergency motion for custody on November 23, 2015. Appellee testified B.B. has lived with him since September of 2013. Appellee stated appellant signed custody of B.B. over to appellee; however, the signed custody agreement was not entered into evidence at the hearing. Appellee testified appellant has seen B.B. twice in two years. When appellant saw B.B. on Christmas of

2013, she was supposed to keep him all week-end, but after twelve hours called appellee to come and get B.B. because he was screaming and crying.

{¶5} Appellee stated on August 22, 2015, appellant came from Indiana when B.B. was at a week-end visitation with his maternal grandmother. Appellee permitted B.B. to visit his maternal grandmother approximately once per month. Appellant called the police and the police released the child to appellant, who immediately took him to Indiana. Appellee testified appellant took B.B. away from the only friends, family, and home he has known. Appellee had B.B. registered for the Early Head Start program. Appellee believed B.B. was in immediate danger and irreparable harm would occur if temporary custody was not granted to him.

{¶6} On cross-examination, appellee testified it was his understanding that appellant has been diagnosed as bipolar and schizophrenic. However, he has no documentation of such diagnoses. Appellee was charged with menacing in 2006 and the charge was reduced to disorderly conduct. In 2013, appellee pled to attempted aggravated menacing and testified appellant was breaking into his house to steal furniture. Appellee was placed on probation and subsequently complied with and completed probation. Appellee has a driver's license through the State of Indiana as he lived there from 2008 to 2010 and he still claims residence there at his father's house. Appellee obtained a lease on a house in Ohio on October 1, 2015.

{¶7} Appellant testified she was diagnosed with depression several years ago and saw a counselor. Appellant stated she has not been diagnosed as bipolar or schizophrenic. With regards to an incident appellee was concerned about when she took

B.B. to Indiana, appellant testified she went bird hunting and a gun accidentally went off when a dog stepped on the trigger. B.B. was at home with the babysitter.

{¶8} Appellant testified she met with appellee and B.B. at the mall three times and met appellee with B.B. at McDonald's once in 2014. Appellant submitted an exhibit with a list of times she saw B.B. during the two years he was with appellee. Appellant also stated she talked to B.B. when her mother had him for visitation. Appellant testified she has a good relationship with B.B. When she took B.B. to Indiana, she thought appellee lived in a shelter. Appellant lives in Indiana with her fiancée. Appellant's aunt had guardianship of appellant's daughter.

{¶9} The trial court issued a judgment entry on November 24, 2015 on the motion for emergency custody. The trial court found appellant saw B.B. nine times between August of 2013 and August 22, 2015. The trial court determined that because of appellant's lack of contact with B.B. and the distance between the residences of appellant and appellee, irreparable harm would occur if the trial court did not take immediate action. The trial court stated appellant removed B.B. from appellee's physical custody with little or no regard to the emotional and/or psychological needs of the child. The trial court thus granted temporary custody of B.B. to appellee.

{¶10} Appellant appeals the November 24, 2015 judgment entry of the Fairfield County Court of Common Pleas, Domestic Relations Division, and assigns the following as error:

{¶11} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT THE MINOR CHILD WAS IN IMMEDIATE DANGER OR THAT IRREPARABLE HARM

WOULD OCCUR IF JOSHUA BROMBERG WAS NOT GRANTED EMERGENCY CUSTODY."

I.

{¶12} In this case, there was no prior judicial decree allocating parental rights and responsibilities and the parties were never married. The standard of review in custody cases is whether the trial court abused its discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 1997-Ohio-260, 674 N.E.2d 1159. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶13} Given the nature and impact of custody disputes, the trial court's discretion will be accorded paramount deference because the trial court is best suited to determine the credibility of testimony and integrity of evidence. *Mitchell v. Manders*, 5th Dist. Morrow No. 14CA0011, 2015-Ohio-1529. Specifically, "the knowledge a trial court gains through observing witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). Therefore, giving the trial court due deference, a reviewing court will not reverse the findings of a trial court when the award of custody is supported by a substantial amount of credible and competent evidence. *Davis v. Flickinger*, 77 Ohio St.3d 415, 1997-Ohio-260, 674 N.E.2d 1159.

{¶14} The Ohio Revised Code provides for a court to issue an emergency temporary custody order during the pendency of the case. See R.C. 3109.043.

{¶15} Appellant argues the trial court abused its discretion in finding that B.B. was in immediate danger or that irreparable harm would occur if appellee was not granted

emergency custody. Fairfield County Common Pleas Court, Domestic Relations Division, Local Rule 8.6 provides that ex parte orders are discouraged, but may be entered when it is shown irreparable harm to a child will occur unless immediate action is taken.

{¶16} We first note that, while the November 10, 2015 judgment entry was an ex parte order, the judgment entry at issue in the instant case, issued on November 24, 2015, was entered after a hearing. Appellant makes several arguments regarding the trial court's granting of the ex parte motion on November 10, 2015. We find the issue regarding the granting of the November 10th ex parte order has been resolved by the trial court's hearing and final decision regarding the motion for emergency custody and therefore is moot as it pertains to this appeal. See *Bentley v. Bentley*, 5th Dist. Fairfield No. 07CA49, 2008-Ohio-3279.

{¶17} Upon review of the record, we find the trial court did not abuse its discretion in granting appellee's motion for emergency custody and finding irreparable harm would occur if the motion were not granted. "Irreparable harm" is defined as an injury "for the redress of which, after its occurrence, there could be no plain, adequate and complete remedy at law, and for which restitution in specie (money) would be impossible, difficult, or incomplete. *Cleveland v. Cleveland Electric Illuminating Co.*, 115 Ohio App.3d 1, 684 N.E.2d 343 (8th Dist. 1996). It is within the trial court's discretion to make a reasonable determination whether an adequate remedy at law is available or whether irreparable injury will result to the movant. *Dayton Metro. Housing Auth. v. Dayton Human Relations Council,* 81 Ohio App.3d 436, 611 N.E.2d 384 (2nd Dist. 1992).

{¶18} Though appellant argues appellee had to submit expert testimony by a doctor or psychologist for there to be substantial and competent evidence of irreparable

injury to B.B., she cites no law in support of the proposition that such expert testimony is required. Further, neither the definition of "irreparable injury" nor the case law interpreting the definition indicate such expert testimony is required.

**{¶19}** In this case, appellant voluntarily left B.B. with appellee in August or September of 2013. Appellant did not consult appellee about taking B.B. back to Indiana with her even though B.B. had lived with appellee for two years. Instead, appellant removed B.B. from appellee's custody during a visit appellee allowed between B.B. and his maternal grandmother. Appellant saw B.B. nine times in two years, with four of those visits occurring with appellee and B.B. at the mall. Appellant lives in Avilla, Indiana and appellee lives in Lancaster, Ohio. Appellee testified when appellant took B.B. to Indiana, he was taken from the only home he knew. Further, appellee testified B.B. would suffer irreparable harm if his motion was not granted. While appellant testified B.B. would not suffer irreparable harm and B.B. was happy in Indiana, the trial judge is in the best position to view the demeanor, attitude, and credibility of each witness and to weigh the evidence and testimony. *Davis v. Flickinger*, 77 Ohio St.3d 415, 1997-Ohio-260, 674 N.E.2d 1159. This is especially true in a custody case, since there may be much that is evidence in the parties' demeanor and attitude that does not translate well to the record. *Davis v. Flickinger*, 77 Ohio St.3d 415, 1997-Ohio-260, 674 N.E.2d 1159.

**{¶20}** Based on the lack of contact appellant had with B.B. in the two years prior to her taking him to Indiana, the distance between the parties' homes, and the testimony of appellee, we find the trial court did not abuse its discretion in determining there was substantial, competent, and credible evidence of irreparable harm if temporary custody was not granted to appellee.

{¶21} Accordingly, appellant's assignment of error is overruled.  The November 25, 2015 judgment entry of the Fairfield County Court of Common Pleas, Domestic Relations Division, is affirmed.

By Gwin, J.,

Farmer, P.J., and

Wise, J., concur